DECISION AND JUDGMENT ENTRY
This is an appeal from the Hillsboro Municipal Court, which found in favor of Plaintiff-Appellee State Farm Mutual Automobile Insurance Company ("State Farm") on its claims against Defendant-Appellant Frank B. Lucas. State Farm brought a subrogation action against appellant to recover payments it made to its insureds, Linda and James Murphy, as a result of an automobile accident caused by appellant's negligence. Appellant argues that State Farm's action against him is barred by the doctrine of accord and satisfaction. Appellant also argues that State Farm failed to prove that his negligence was the proximate cause of Mrs. Murphy's injuries, or that the amount of the settlement was reasonable. We disagree and affirm the judgment of the trial court.
 STATEMENT OF THE FACTS
On March 7, 1997, appellant rear-ended Linda M. Murphy on West Main Street in Hillsboro, Highland County, Ohio. Mrs. Murphy had stopped at a crosswalk to allow a pedestrian to cross the street. Appellant drove into the back of her car at a speed of approximately twenty to twenty-five m.p.h. Mrs. Murphy complained of neck pain immediately after the accident. She was transported by ambulance to a nearby hospital.
Because appellant was uninsured at the time of the accident, Mrs. Murphy and her husband, James J. Murphy, Jr., sought compensation from their own insurance carrier, State Farm. The automobile, which was registered to Mr. Murphy, was heavily damaged in the collision. State Farm paid Mr. Murphy $4,405 for the loss of the automobile, as well as $160 for rental car expenses.
On October 18, 1997, appellant signed a promissory note to State Farm in which he agreed to reimburse State Farm $4,290.[1] This interest-free note provided that appellant was to pay State Farm $100 per month, beginning on October 20, 1997. The note also stated, "THIS NOTE DOES NOT INCLUDE SETTLEMENT OF INJURY CLAIMS."
On September 8, 1998, State Farm sent appellant a letter requesting that appellant sign a new promissory note in the amount of $14,934.46. This amount reflected payments that State Farm had made on behalf of Mrs. Murphy for her medical expenses, which State Farm had paid directly to the medical service providers. The new note also included $8,000 that State Farm had paid to the Murphys to settle their claims under the uninsured motorist section of the insurance policy. Appellant refused to sign the new promissory note, and he ceased making payments on the original note at that time.
On February 18, 1999, State Farm filed a complaint against appellant in the Hillsboro Municipal Court. The complaint alleged that State Farm had paid the Murphys net amounts of $4,290 for the property damage, $2,644.46 for Mrs. Murphy's medical expenses, and $8,000 for the Murphys' uninsured motorist claims. The complaint acknowledged that appellant had thus far paid $900 on the original note, as well as $100 to Mr. Murphy. The complaint demanded judgment in the amount of $13,934.46.
The trial court held a bench trial on State Farm's complaint on October 27, 1999. At trial, the parties stipulated that appellant's negligence caused the accident and that State Farm had been subrogated to the Murphys' cause of action. The parties also stipulated that appellant owed State Farm a balance of $3,390 on the original promissory note.
Appellant disputed the reasonableness of the payments that State Farm made for Mrs. Murphy's medical expenses and the Murphys' uninsured motorist claims. Appellant argued that there was no proof that the accident was the proximate cause of Mrs. Murphy's injuries, for which those medical expenses were incurred. Appellant also argued that State Farm had no reason to pay $8,000 for the Murphys' uninsured motorist claims. Finally, appellant argued that the original promissory note constituted an accord and satisfaction of all claims against him. Therefore, appellant argued that State Farm's only remedy was to sue for the balance owed on the original promissory note.
On December 30, 1999, the trial court filed its judgment entry, finding in favor of State Farm. The judgment entry stated, "All issues except negligence have been stipulated." The court found that State Farm had proven all of the elements of its case and entered judgment against appellant in the amount of $13,934.46.
Appellant filed a timely notice of appeal and presents three assignments of error for our review.
ASSIGNMENT OF ERROR NO. I:
 THE COURT ERRED IN FINDING MR. LUCAS LIABLE FOR ANY AMOUNTS ABOVE THE AGREED UPON AMOUNT OF $4,290.00, WHICH CONSTITUTED AN ACCORD AND SATISFACTION OF ALL LIABILITY.
 ASSIGNMENT OF ERROR NO. II:
 THE COURT ERRED IN FINDING THAT STATE FARM HAD PROVEN ALL ELEMENTS OF ITS CLAIM BECAUSE STATE FARM FAILED TO PRESENT ANY EVIDENCE OF A CAUSAL LINK BETWEEN THE ACCIDENT AND MS. MURPHY'S MEDICAL TREATMENT.
 ASSIGNMENT OF ERROR NO. III:
 THE COURT ERRED IN FINDING THAT STATE FARM HAD PROVEN ALL ELEMENTS OF ITS CLAIM WITHOUT ANY TESTIMONY AS TO THE MEDICAL NECESSITY OF THE TREATMENT MS. MURPHY UNDERWENT OR AS TO THE REASONABLENESS OF THE $8,000.00 SETTLEMENT.
 I.
In his First Assignment of Error, appellant argues that the original promissory note constituted an accord and satisfaction of all claims against him. Therefore, appellant argues that State Farm is barred from raising any claims other than for the balance due on the original note.[2]
"An accord is a contract between a debtor and a creditor in which the creditor's claim is settled in exchange for a sum of money other than that which is allegedly due. Satisfaction is the performance of that contract." Allen v. R.G. Indus. Supply (1993), 66 Ohio St.3d 229, 231,611 N.E.2d 794, 797. While the doctrine of accord and satisfaction is asserted as a defense primarily in contract cases, it applies with equal force in tort cases. See id.
The doctrine of accord and satisfaction is an affirmative defense. As such, the debtor or tortfeasor asserting this defense bears the burden of proving that an accord and satisfaction occurred. If the debtor successfully proves the defense, however, it serves to completely discharge the underlying debt as a matter of law. See id.
The doctrine of accord and satisfaction contains two safeguards that protect creditors and injured parties from overreaching by debtors and tortfeasors. The first safeguard is that there must be a bona fide dispute over the debt. See id. at paragraph two of the syllabus. The reason for this requirement is, in part, to place unsophisticated creditors on notice that accepting the accord will sacrifice a part of the subject claim. In a tort case, there is a bona fide dispute "only if the injured party has expressly asked the alleged tortfeasor for compensation of some sort for his or her injury." Id. at 232,611 N.E.2d at 798.
The second safeguard is that "the creditor must have reasonable notice that the [payment] is intended to be in full satisfaction of the debt."Id. at paragraph two of the syllabus. The debtor must make it clear to the creditor that the offer of accord is for a complete discharge of the disputed debt. In the absence of such a clear expression, "`any payment made and accepted will be treated as part payment.'" Id. at 232-233,611 N.E.2d at 798, quoting Calamari Perillo, Contracts (3 Ed. 1987), 215, Section 4-11.
We find that appellant failed to satisfy his burden of proving that the original promissory note constituted an accord and satisfaction of all claims against him. The parties stipulated that appellant signed the note and that he owed $3,390 on the note at the time of trial. However, the trial transcript does not contain any testimony about the circumstances surrounding the signing of the note. As a result, there is no evidence to establish that the promissory note signed by appellant satisfied either of the safeguards discussed above.
First, there is no evidence of a bona fide dispute over the amount of appellant's obligation at the time that he executed the promissory note in favor of State Farm. Under Allen, there is a bona fide dispute in a tort case when the injured party requests compensation from the tortfeasor. Appellant argues that he signed the promissory note when State Farm approached him and requested payment, but there is no evidence in the record to substantiate this claim. The record establishes State Farm's request that appellant sign a second promissory note for Mrs. Murphy's medical expenses and for the uninsured motorist claims. However, appellant presented no evidence that he signed the original promissory note in response to State Farm's demand for payment.
Second, there is no evidence that State Farm understood the promissory note to be in full satisfaction of all claims. Appellant argues that State Farm induced him to believe that payment of the promissory note would fully discharge his obligations. However, appellant's understanding of the purpose of the note is irrelevant. The safeguards in the doctrine of accord and satisfaction are meant to protect creditors. Thus, the issue is whether appellant clearly articulated to State Farm that he was signing the promissory note in exchange for a complete release of liability from all claims State Farm had against him arising from this accident.
Appellant failed to present any evidence of the required express agreement between the parties that the promissory note would satisfy all claims against him. Such an agreement could be expressed on the note itself. See Allen, supra. However, the note specifically states that it "does not include settlement of injury claims." In light of the clear provisions of the promissory note, we find that appellant did not notify State Farm that he was signing the note on the express condition that it constitute a release of all claims against him.
Accordingly, appellant's First Assignment of Error is OVERRULED.
 II.
In his Second Assignment of Error, appellant argues that the trial court erred in finding that State Farm had proven all of the elements of its claim. Although not stated as such, appellant's argument is essentially that the trial court's judgment is against the manifest weight of the evidence. A judgment that is supported by competent, credible evidence going to all of the essential elements of the case will not be reversed as being against the manifest weight of the evidence. SeeC.E. Morris Co. v. Foley Const. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus. "This standard of review is highly deferential and even `some' evidence is sufficient to sustain the judgment and prevent a reversal." Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159,694 N.E.2d 689, 692.
Appellant contends that State Farm failed to prove that the accident was the proximate cause of Mrs. Murphy's injuries and medical treatment. According to appellant, Mrs. Murphy's medical records reveal that she suffered from a pre-existing degenerative disc problem prior to the accident. In addition, appellant contends that x-rays and MRIs performed on Mrs. Murphy's neck do not show any sign of an injury. Appellant argues that Mrs. Murphy suffered only a mild neck strain in the accident, and that expert testimony is necessary to prove that her medical treatment was related to this injury.
In most cases, a plaintiff must present expert testimony to prove the proximate cause of an injury. See Darnell v. Eastman (1970),23 Ohio St.2d 13, 261 N.E.2d 114, syllabus. Such testimony is not necessary, however, if the causal relationship is a matter of common knowledge and understanding among laypersons. See id.
There is some dispute among Ohio courts as to whether expert testimony is required to establish that an automobile accident is the proximate cause of a neck or back injury. Compare Davis v. DT Limousine Serv. (June 16, 1994), Cuyahoga App. Nos. 65683 and 66027, unreported (finding cause of shoulder injury within common knowledge while neck and back injuries required expert testimony), with Krasienko v. Jarnigan (Jan. 17, 1996), Lorain App. No. 95CA006098, unreported (finding common knowledge that rear-end collisions can cause head, neck, and shoulder injuries). In fact, this court has previously held that in a case involving a rear-end collision, "damages for subjective injuries occurring without physical contact, such as whiplash, expert testimony as to causation is required." Mahaffey v. Stenzel (Jan. 25, 1999), Ross App. No. 97CA2391, unreported.
The reasons for this disparity of results are not readily apparent. InMahaffey, we explained that injuries involving "physical contact" are within common knowledge, while injuries without "contact" require expert testimony. Analyzing Davis, supra, we reasoned that a layperson could comprehend how a shoulder injury might be caused by contact with a shoulder-strap safety belt. Conversely, we reasoned that a whiplash injury does not involve any similar contact, so expert opinion is necessary to establish causation. Unfortunately, our analysis inMahaffey does not account for the fact that an automobile passenger experiences contact with his or her seatback and headrest. If being violently thrust against a safety belt can cause a shoulder injury, certainly being thrust against a headrest or seatback with similar force can cause neck or back injuries.
A better explanation is that the determination of whether the causation of an injury is within common knowledge requires analysis of the particular facts of each case. It is common knowledge that automobile accidents can cause neck or back injuries. In a rear-end collision in which the lead vehicle sustains heavy damage, it is common knowledge that the occupants of the lead vehicle could sustain neck or back injuries. On the other hand, if there is little or no damage to either vehicle, or if the plaintiff delayed seeking medical attention, then it is more likely that expert testimony is necessary to establish the cause of the plaintiff's injuries. See Maney v. Jernejcic (Nov. 16, 2000), Franklin App. No. 00AP-483, unreported.
In the case sub judice, State Farm presented evidence that the accident caused heavy damage to the Murphys' vehicle. Mrs. Murphy testified that she experienced pain in her neck and upper back immediately after the accident. She further testified that she did not suffer from neck or back problems prior to the accident, and that she had not suffered any additional injuries to her neck or back since the accident.
We find that the trial court's judgment is supported by competent, credible evidence. Mrs. Murphy's testimony, combined with the seriousness of the accident, constitute some evidence that the accident was the proximate cause of her neck and back problems. Appellant's attempt to contradict this testimony with the medical records is not persuasive. These records were not submitted to the trial court, and we shall not consider them for the first time on appeal.
Accordingly, appellant's Second Assignment of Error is OVERRULED.
 III.
In his Third Assignment of Error, appellant again argues that the trial court erred in finding that State Farm had proven all of the elements of its case. Appellant argues that State Farm failed to establish the medical necessity of Mrs. Murphy's treatment. Appellant further argues that State Farm failed to prove that $8,000 was a reasonable amount for which to settle the Murphys' uninsured motorist claims. We apply the requisite manifest weight of the evidence standard to this assignment of error.
As appellant notes, copies of medical bills can constitute prima facie evidence that charges for medical services rendered are reasonable.
In an action for damages arising from personal injury or wrongful death, a written bill or statement, or any relevant portion thereof, itemized by date, type of service rendered, and charge, shall, if otherwise admissible, be prima-facie evidence of the reasonableness of any charges and fees stated therein for medication and prosthetic devices furnished, or medical, dental, hospital, and funeral services rendered by the person, firm, or corporation issuing such bill or statement, provided, that such bill or statement shall be prima-facie evidence of reasonableness only if the party offering it delivers a copy of it, or the relevant portion thereof, to the attorney of record for each adverse party not less than five days before trial.
R.C. 2317.421.
State Farm offered Mrs. Murphy's medical bills into evidence at trial. These bills were itemized as to date, service rendered and charge. In addition, appellant concedes that his counsel received copies of these bills more than five days before trial. Under R.C. 2317.421, these bills constitute prima facie evidence that the charges for Mrs. Murphy's medical treatments were reasonable.
Appellant argues that additional evidence in the record rebuts the presumption of reasonableness under R.C. 2317.421. Specifically, appellant contends that Mrs. Murphy's medical records fail to show any signs of injury, and that there was no change in her treatment for eighteen months after the accident. Under these circumstances, appellant argues that it was unreasonable for State Farm to continue paying for Mrs. Murphy's medical treatment.
As with the Second Assignment of Error, the medical records were not admitted into evidence, and we shall not consider them for the first time on appeal. Even if we were to consider the medical records, however, there is still some competent credible evidence in the record to support the trial court's judgment. Mrs. Murphy testified that she continued to experience pain and discomfort from her injuries at the time of trial. However, she also testified that her condition had improved since the accident. Based on this testimony, the trial court could reasonably conclude that it was reasonable for State Farm to continue paying for Mrs. Murphy's treatment.
Appellant also argues that State Farm failed to prove that $8,000 was a reasonable amount to settle the Murphys' uninsured motorist claims. Mrs. Murphy testified that State Farm offered her $6,500 to settle her claim, but that she demanded $8,000. She further testified that she arrived at this figure by adding up the costs of her medical treatment and the damage to her car. Based on this testimony, appellant argues that he is being forced to pay for these damages twice.
The reasonableness of the $8,000 settlement does not depend on how Mrs. Murphy calculated her demand. The purpose of the settlement was to resolve the Murphys' claims under the uninsured motorist provision of the State Farm insurance policy. Had the Murphys pursued an action against appellant instead of collecting uninsured motorist benefits, they would have been entitled to seek damages for Mrs. Murphy's pain and suffering, as well as Mr. Murphy's loss of consortium.
At trial, Mrs. Murphy testified how the pain from her injury had affected her life since the accident. Mr. Murphy testified that he had to take over some of his wife's household work after the accident, and that his wife's injury affected the quality of their life. This testimony constituted some evidence that Mrs. Murphy was entitled to damages for her pain and suffering, and that Mr. Murphy was entitled to damages for loss of consortium. We find, therefore, that the trial court's judgment is supported by competent, credible evidence.
Accordingly, appellant's Third Assignment of Error is OVERRULED. The judgment of the Hillsboro Municipal Court is AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Hillsboro Municipal Court to carry this judgment into execution.
A certified copy of the entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
David T. Evans, Judge.
Abele, P.J. Concurs in Judgment and Opinion on Assignment of Error I; Concurs in Judgment Only on Assignments of Error II and III.
Harsha, J. Concurs in Judgment Only.
[1] For reasons that do not appear in the record, appellant signed a duplicate promissory note on November 24, 1997. Except for the date of appellant's signature, the two notes are identical.
[2] We note that there is an issue as to whether the promissory note signed by appellant can constitute satisfaction of an accord. Appellant stopped making payments on the original note after State Farm requested that he sign the new note. State Farm argues that an accord and satisfaction requires full payment of the promissory note. For purposes of this assignment of error, we shall assume, without deciding, that the promissory note signed by appellant is a negotiable instrument. We shall further assume, again without deciding, that negotiating such an instrument to a creditor could possibly constitute satisfaction of an accord.