KLEINHOLZ et al., Appellants,

v.

GOETTKE et al., Appellees.

[Cite as *Kleinholz v. Goettke,* 173 Ohio App.3d 80, 2007-Ohio-4880.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–060414 and C–061011.

Decided Sept. 21, 2007.

Kevin Frank, for appellants.

Terrence M. Garrigan, for appellees.

LEE H. HILDEBRANDT JR., Presiding Judge.

{¶ 1} Plaintiff-appellants Jason and Sherrie Kleinholz purchased a house from defendants-appellees Kenneth and Theresa Goettke in 2001. Approximately two years later, the Kleinholzes' basement flooded. While cleaning up after the flood,

the Kleinholzes discovered mold growing in their basement behind some paneling. The family moved out of the house and abandoned almost all their belongings. The move was prompted, apparently, by the advice of Kevin Roegner, an industrial hygienist whom the Kleinholzes had hired to identify the types of mold growing in the basement.

{¶ 2} Because the Kleinholzes could not afford to eliminate the mold, they decided not to return to their home and eventually declared bankruptcy allegedly due to the cost associated with their move. The Kleinholzes later sued the Goettkes for fraud and negligent misrepresentation, claiming that the Goettkes had failed to disclose "material water problems" in the house at the time of the sale in 2001. The Kleinholzes sought to recover damages for the diminution in the value of their home based on the presence of the mold and the flooding problem, personal-property damages, and damages associated with their move and bankruptcy, as well as damages for "anger, frustration, and upset." The Kleinholzes also sought punitive damages in connection with the fraud charge.

{¶ 3} The case proceeded to a bifurcated jury trial under R.C. 2315.21—the first phase was to address liability and compensatory damages, and the second was to address punitive damages. At the close of the first phase of trial, the court ruled that the jury could not consider any evidence related to mold on the basis that the Kleinholzes had not established that the mold was physically harmful and therefore that they could not prove an injury. Included in this ruling was all evidence that the Kleinholzes had presented concerning the diminution in the value of their home as a result of the flooding and the mold. The jury was permitted to consider only whether the Goettkes had fraudulently or negligently failed to disclose a flooding problem and whether they were therefore responsible for property damage caused by the flooding. At the close of the Kleinholzes' case, the court also granted a directed verdict in favor of the Goettkes on the Kleinholzes' claim of "anger, frustration and upset," which the court treated as a claim for intentional infliction of emotional distress.

{¶ 4} Following deliberations, the jury found the Goettkes liable for negligent misrepresentation, but not fraud, and awarded the Kleinholzes $7,000 in compensatory damages. The court did not allow the Kleinholzes to proceed with the second phase of trial and granted a directed verdict in favor of the Goettkes on the punitive-damages claim. The Kleinholzes now appeal. We affirm in part, reverse in part, and remand this case for further proceedings consistent with this decision.

### Directed Verdict, Not Exclusion of Evidence

{¶ 5} In their first and second assignments of error, the Kleinholzes assert that the trial court erred by not allowing the jury (1) to consider any mold-related

evidence or to award damages arising from the presence of mold in their home, or (2) to consider the diminution in the value of their home as a result of the Goettkes' conduct. Under both assignments of error, the Kleinholzes argue that the trial court abused its discretion by "excluding from evidence" all mold-related testimony and exhibits. The court, however, did not exclude these items from evidence. It instead ruled that the jury was not permitted to consider this evidence, or to award any damages allegedly resulting from the presence of the mold, because the Kleinholzes had failed to establish that the presence of the mold had caused them an injury. While the court did not explicitly state that it had granted a directed verdict in favor of the Goettkes on all mold-related claims, this was actually what had occurred. Consequently, we recast these assignments of error to challenge the court's decision to grant a directed verdict on the mold-related claims.

{¶ 6} We review the trial court's decision de novo.[1] A directed verdict is proper when there is no substantive, probative evidence going to one or more elements of the claim at issue, and when reasonable minds can come only to one conclusion that is adverse to the nonmoving party.[2] We note that "probative evidence" is evidence that tends to prove the issue in question.[3]

## The Injury Necessitating the Move was Physical Harm

{¶ 7} To demonstrate either fraud or a negligent misrepresentation, a plaintiff must, of course, prove an injury.[4] In this case, the trial court determined that the Kleinholzes needed the testimony of a medical expert to demonstrate that the type of mold found in their home was physically harmful, thereby justifying their move and related expenses. We agree with the trial court on this issue.

{¶ 8} The Kleinholzes argue that they did not have to present expert testimony because they had not pursued a personal-injury claim. But the real premise of most of the Kleinholzes' claims concerning the mold was that it had been

---

1. *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.,* 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, at ¶ 4; see, also, *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 23 O.O.3d 115, 430 N.E.2d 935, paragraph one of the syllabus; Civ.R. 50.

2. See id.

3. *Our Place Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 571, 589 N.E.2d 1303.

4. See *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 632, 605 N.E.2d 936 (setting forth elements of fraud); see, also, *Delman v. Cleveland Hts.* (1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835, and *Veterinary Dermatology, Inc. v. Bruner,* 1st Dist. No. C–040648, 2005-Ohio-5552, 2005 WL 2679628, at ¶ 40 (setting forth elements of negligent misrepresentation).

physically harmful for them to remain in the house while there was mold present, thereby necessitating their move. The Kleinholzes had asserted physical harm regardless of how they attempted to frame the issue. And we hold that the trial court correctly concluded that the issue whether the types of mold found in the Kleinholzes' home were physically harmful was not a matter of common knowledge and that expert medical testimony was therefore required.[5]

## The Evidence Offered Was Not Probative of Injury

■ {¶ 9} The Kleinholzes next assert that, even if they needed expert testimony to prove an injury, Roegner's testimony was sufficient. We are not persuaded. Roegner, an industrial hygienist, testified that one of the two types of mold found in the Kleinholzes' home could have potentially caused health problems in people susceptible to that type of mold, and he also testified that the health effects of the other type of mold were unclear. He further stated that his company had given the Kleinholzes a precautionary recommendation that their child leave the house until the mold elimination was complete. We conclude that this evidence was too general and attenuated to be probative of an injury.[6]

{¶ 10} The first and second assignments of error are without merit to the extent that the trial court correctly directed a verdict on the Kleinholzes' fraud and negligent-misrepresentation claims regarding any injury and resulting damages in connection with their move.

## One Mold–Related Claim Remains

■ {¶ 11} The court erred, however, in directing a verdict in favor of the Goettkes on the issue of the diminution in the value of the Kleinholzes' home as a result of the flooding and the mold. This claimed injury had nothing to do with physical harm. And the Kleinholzes presented testimony from a real estate expert who opined that in view of the flooding and mold defects in the home, the Kleinholzes had paid thousands of dollars more for the house than what it was actually worth at the time. We are aware that the appraiser admitted that he "didn't know" whether the flooding repairs and mold elimination were necessary or reasonable, but we hold that there was sufficient evidence presented to submit this issue to the jury.

---

**5.** See *Darnell v. Eastman* (1970), 23 Ohio St.2d 13, 52 O.O.2d 76, 261 N.E.2d 114, syllabus; cf. *Bogner v. Titleist*, 6th Dist. No. WD–06–039, 2006-Ohio-7003, 2006 WL 3825228, at ¶ 16 (expert testimony necessary to establish connection between physical symptoms and exposure to mold).

**6.** See *Our Place Inc.*, 63 Ohio St.3d 570, 589 N.E.2d 1303.

## Intentional Infliction of Emotional Distress

{¶ 12} The Kleinholzes next submit that the trial court erred in directing a verdict on their claim for "anger, frustration and upset." There is no such claim recognized in Ohio, and the trial court properly treated this as a claim for intentional infliction of emotional distress. To establish intentional infliction of emotional distress, a plaintiff must demonstrate, in part, that a defendant's conduct was extreme and outrageous.[7] Upon a review of the record, we are convinced that the Kleinholzes failed to offer sufficient evidence to establish this element. We therefore find no error in relation to this claim.

{¶ 13} The Kleinholzes' first and second assignments of error are sustained in part and overruled in part.

## Punitive Damages Were Tied to the Fraud Claim

{¶ 14} In their third and final assignment of error, the Kleinholzes claim that the trial court erred by granting a directed verdict in favor of the Goettkes on the issue of punitive damages and attorney fees, because the court did not allow them to proceed with the second phase of trial. This argument has no merit.

{¶ 15} R.C. 2315.21(B)(1)(b) provides that a plaintiff may proceed with the second stage of a bifurcated jury trial only when the jury determines in the initial phase that the plaintiff is entitled to recover compensatory damages. In this case, the Kleinholzes had requested punitive damages only in connection with their claim of fraud. The jury did not return a verdict in favor of the Kleinholzes on this claim. The trial court correctly ruled, therefore, that the Kleinholzes could not go forward with their punitive-damages claim.

{¶ 16} The Kleinholzes seem to suggest that the jury was only instructed on negligent misrepresentation and that it therefore never reached the issue of fraud. But our review of the jury instructions convinces us otherwise, despite several cryptic comments from the bench outside the jury's presence suggesting that the fraud claim was no longer in the case.

{¶ 17} The Kleinholzes' third assignment of error is overruled.

{¶ 18} In sum, we affirm the judgment of the trial court in all respects except one. The judgment entered against the Kleinholzes on their negligent-misrepresentation claim is reversed, and this cause is remanded for further proceedings

---

7. See *Phung v. Waste Mgt., Inc.* (1994), 71 Ohio St.3d 408, 410, 644 N.E.2d 286; *Brunsman v. W. Hills Country Club,* 151 Ohio App.3d 718, 2003-Ohio-891, 785 N.E.2d 794, at ¶ 17.

solely on that claim as it pertains to the alleged diminution in value of the Kleinholzes' home.

Judgment affirmed in part and reversed in part, and cause remanded.

CUNNINGHAM and DINKELACKER, JJ., concur.